[Johnson v. Hanover National Bank of New York.]

# Johnson *v.* Hanover National Bank of New York.

*Action on Promissory Notes, by Indorsee against Makers.*

88 271
98 604
88 271
99 94
88 271
109 208

1. *Plea of nul tiel corporation.*—In an action brought by a foreign corporation, as the assignee or indorsee of a promissory note, a plea averring that "plaintiff is not a corporation duly authorized by law to maintain this suit," presents a good defense to the action, and devolves on the plaintiff the *onus* of proving its corporate existence.

2. *Note given on sale of commercial fertilizer; failure to affix tags to bags or packages.*—In an action on a promissory note given for the agreed price of a quantity of a commercial fertilizer bought by the defendant, a plea averring that the sale was made in Alabama, and that tags were not affixed to the bags or packages when delivered, as by law required (Sess. Acts 1882-3, p. 193; 1884-5, p. 172; Code, § 4154), presents a full defense to the action.

3. *Validity of contract; by what law governed.*—A contract for the sale and delivery of a commercial fertilizer, made in Alabama, where the article is to be delivered to the purchaser, and where he executes his note for the price, payable at a bank in Alabama, is an Alabama transaction, and its validity is to be determined by the laws of Alabama, although the seller has his place of business in Georgia.

4. *Defenses against commercial paper; burden of proof.*—Commercial paper, in the hands of an indorsee for value before maturity, is not subject to any abatement, discount, cross demand, or failure of consideration, which might avail the maker as against the payee; but the *onus* is on the holder to show that he purchased it for value before maturity, though he is not required to negative notice of the infirmity.

APPEAL from the Circuit Court of Tallapoosa.

Tried before the Hon. JAS. R. DOWDELL.

This action was brought by the Hanover National Bank of New York, "a corporation duly chartered and incorporated under and by authority of the laws of the State of New York," against J. C. Johnson & Co., a partnership composed of J. C. Johnson and R. L. Smith, and against the partners individually; and was founded on two promissory notes signed in the partnership name, each for $372, with interest, dated January 10th, 1885, and payable, one on November 15th, and the other December 1st, 1885. The complaint alleged that the notes were payable to the makers, were indorsed by them to the Rialto Guano Company of Baltimore, and by that company to the plaintiff. A plea of infancy was interposed by Smith, and the suit was dismissed as to him. Seven pleas were filed by Johnson, the second of which

averred that the plaintiff "is not a corporation duly authorized by law to maintain this suit;" and the seventh, "that said notes were given for the purchase of commercial fertilizers sold to defendant at Dadeville, Alabama; that the same was in bags, and that no tags prepared by the Commissioner of Agriculture, and printed thereon the word *Guaranteed*, with year or season in which they were to be used, and a *fac simile* of the signature of said commissioner thereon [ ? ], and that said sale was in violation of a penal statute of Alabama." The court struck the second plea from the files on motion, but overruled a demurrer to the seventh; and the judgment-entry recites that a demurrer to plaintiff's replication to the seventh plea was overruled, but the record does not show what that replication was.

On the trial, as the bill of exceptions shows, the notes having been offered in evidence by the plaintiff, the defendant offered in evidence, in support of his seventh plea, "the contract of the parties, in words and figures as follows," setting it out. The contract is dated "Atlanta, Ga., Octo. 29, 1884," signed by S. A. Wetzler, and addressed to "J. C. Johnson & Co., Dadeville, Ala.;" and contains a proposal to sell them "25 tons, and as much more as may be mutually satisfactory, of Georgia Standard Ammoniated Superphosphate, at $31 per ton of 2,000 lbs., in bags F. O. B., at Dadeville, Ala.; to be shipped, say within two months from date, to Dadeville, Ala.;" and providing, among other things, "You will be required to give us your own promissory notes, payable in bank, say two in number, maturing respectively Nov. 15th and Dec. 1st, 1885, as soon as we deliver to you the fertilizers, or bill of lading of shipment." The acceptance of the proposal by J. C. Johnson & Co., written at the bottom, is dated "Dadeville, Ala., Octo. 29th, 1884," addressed to said Wetzler at Atlanta, and in these words: "Your offer is hereby accepted, upon terms and conditions stated in this contract."

"It was proved by said J. C. Johnson, defendant, that said contract was made and signed by both parties at Dadeville, Ala.; that said notes were also signed there, and payable at the Bank of Opelika, Ala.; that the only consideration was for the fertilizers described in said contract; that the notes were not signed until the fertilizers were delivered to them on the cars at the depot in Dadeville; that the fertilizers were not tagged in any way when he received them, and that he made no agreement with the seller to tag the same. He

[Johnson v. Hanover National Bank of New York.]

testified, also, that about one month after he received said guano, and after he had disposed of a large part of it, some tags came to him through the post-office, but he did not know who sent them; that there was enough to have tagged all of the guano, and that he tagged some of it, but could not remember how much; that he did not know of his own knowledge where the guano was shipped from, but the bill of lading showed that it was shipped from Atlanta, Ga., and the freight was prepaid to Dadeville; that he was a merchant, and bought the guano to sell to farmers; that he did not know it was a violation of law to sell fertilizers without being branded and tagged; that he executed the notes after the guano was received at Dadeville, and forwarded the same to the payees at Baltimore, Md.; and that the other parties to the contract were never again at Dadeville after the contract was signed. This was all the evidence; and the plaintiff thereupon asked the court to charge the jury, that, if they believed the evidence, they must find for the plaintiff, as against Johnson; to which charge he excepted."

The action of the court in striking the second plea from the files, and the charge to the jury, are now assigned as error.

W. D. BULGER, and JNO. A. TERRELL, for appellant, cited *Woods v. Armstrong*, 54 Ala. 150; *Campbell v. Segars*, 81 Ala. 259; *Steiner v. Ray*, 84 Ala. 93.

STONE, C. J.—The present suit is brought on two notes, executed in Alabama, and payable " at the Bank of Opelika, a bank located in the city of Opelika, Alabama." We take this statement from the complaint, as the notes are not set out. The notes are described as being made payable to the order of the makers, and by them indorsed to the Rialto Guano ·Company of Baltimore City, and by that company indorsed to the plaintiff, and now its property. The plaintiff is described in the complaint as " a corporation duly chartered and incorporated under and by authority of the laws of the State of New York."

Among other defenses, the defendants pleaded "that the Hanover National Bank of New York, the party plaintiff in this action, is not a corporation duly authorized by law to maintain this suit." This, although brief, contains all that is of substance in the plea of *nul tiel corporation*. The notes not being made payable to the plaintiff corporation by name,

18

the defendants were not estopped from disputing its corporate existence. The plea was a defense to the whole action, and devolved on the plaintiff the burden of proving its corporate existence.—*Savage v. Russell*, 84 Ala. 103, and authorities cited. The Circuit Court erred in striking plea No. 2 from the file.

Plea No. 7, if true, amounts to a full defense to the action. Sess. Acts 1882-3, pp. 193-4; *Ib.* 1884-5, p. 172; Code of 1886, part 2, §§ 3153 *et seq.; Campbell v. Segars*, 81 Ala. 259, and authorities cited; *Steiner v. Ray*, 84 Ala. 93. The Circuit Court rightly overruled plaintiff's demurrer to this plea.

The record informs us there was a replication filed to plea No. 7, but that replication is not found in the record. Nor are we informed what its averments were. The bill of exceptions states it contains all the evidence, and it contains nothing from which we can infer the contents of what was relied on in answer to plea No. 7. The trial judge gave the general charge in favor of the plaintiff, and thereby ruled that the plaintiff had made out its case.

If the court below reached the conclusion, from the evidence, that the sale of the fertilizer, the consideration of the notes, was made outside of the State of Alabama, and therefore was not within the influence of our statutes which require certain classes of fertilizers sold, or offered for sale, to be analyzed and tagged, he fell into an error. Every step taken in the negotiation, in the sale, in its consummation by delivery, in giving the notes for the purchase-money, and in fixing the place of payment, stamp it as an Alabama transaction, if the testimony of Johnson be true.—3 Brick. Dig. 733, § 27; *Pilgreen v. State*, 71 Ala. 368; *Shealy v. Edwards*, 73 Ala. 175.

If the conclusion was, that the notes were commercial paper, and, being held by an indorsee, they were not subject in its hands to any abatements, discounts, cross demands, or failure of consideration, which the defendants could have set up against the payee, or first holder, this, under our rulings, was equally an error. It is very true that negotiable paper, traded before maturity to an innocent, uninformed holder for value, is not subject, in the hands of such holder, to any of the defenses enumerated above, which the maker may hold against the payee.—*Cap. City Ins. Co. v Quinn*, 73 Ala. 558. But, to cut off such defenses, it is not enough for such third person to present the paper, indorsed, or otherwise

[Farrior v. New England Mortgage Security Co.]

transferred to him. He must go farther, and show he purchased it for value before its maturity. He need not disprove notice of the alleged imperfection in the consideration. Notice is defensive, and must be proved by the defendant, if he relies on it.—*Ross v. Drinkard,* 35 Ala. 434; *Mayor v. Wetumpka Wharf Co.,* 63 Ala 611, 632.

There was no phase of the testimony set out, which authorized the giving of the general affirmative charge for the plaintiff.

Reversed and remanded.